UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL S. DILL,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CORRECTIONAL MEDICAL<br>SERVICES (CMS), a private corporation<br>under contract at ISCI, P.A. VALLEY,<br>P.A. WINGERT, and N.A. BELFOR,<br><br>　　　　　　Defendants. | Case No. 1:10-cv-00350-BLW<br><br>**ORDER** |

　　　　Pending before the Court is Defendants' Motion for Summary Judgment. (Dkt. 21.) Petitioner has filed a Response and a Supplemental Response (Dkt. 25, 45), and Defendants have filed a Reply. (Dkt. 27.) Having fully reviewed the record, the Court finds that the parties have provided inadequate facts upon which the Court can determine whether there is a genuine dispute as to the material facts supporting the subjective element of deliberate indifference (whether Defendants acted recklessly or intentionally in the manner in which they treated Plaintiff's injury).[1]

　　　　Recently-revised Federal Rule of Civil Procedure 56(e) authorizes the Court to

---

[1] *See Redman v. City of San Diego*, 942 F.2d 1435, 1449 (9th Cir. 1991) ("deliberate indifference" is conduct intended to harm, or conduct that "was so reckless as to be tantamount to a desire to inflict harm.").

**ORDER - 1**

give the parties "an opportunity to support or address [a] fact" if the Court finds that a fact is not adequately supported in the documentation by the parties in their briefing of the Motion for Summary Judgment. In this case, the Court finds that Plaintiff's Amended Complaint, the Offender Concern Forms (kites), and the Health Services Request forms (HSRs) show (1) that Plaintiff was treated more frequently during the two-week period at issue than the medical records attached to Dr. Lossman's Affidavit indicate; and (2) that Plaintiff may have had the start of an infection in his finger that needed to be addressed on or about February 3, but an infection may not have been documented in the medical records.

Dr. Lossman does not appear to have knowledge of the undocumented or poorly-documented medical visits with Plaintiff, and he may not have had knowledge of the alleged infection. In addition, in Defendants' briefing, Will Wingert is identified as both an LPN and an RN, and no explanation is given as to whether these LPNs are licensed professional nurses or license practical nurses and what their corresponding authority to treat or diagnose is. Further, particularly at issue is what the Defendants themselves did, why they did what they did, and what they knew during their interactions with Plaintiff. Thus, the Dr. Lossman Affidavit does not speak to the issue of subjective intent in this case. As a result, the Court will deny the Motion without prejudice, and permit the parties to supplement the record in a new round of summary judgment briefing.

The following is a time line of the facts alleged or documented by the parties. The Court invites the parties to provide further explanations or facts, or correct the time

ORDER - 2

line if necessary.

>     January 27, 2010    Plaintiff injured his right pinky finger by dropping an 85-pound weight on it. (Plaintiff's Amended Complaint, Dkt. 13, p. 6.) He filed a Health Services Request (HSR) form the same day, stating, "Finger hurts, need help!" (Dkt. 21-3, p. 23.)
>
>     Medical records indicate that Plaintiff was examined the same day by Defendant Physician's Assistant (P.A.) Valley and was found to have an inch-long incision on his right pinky finger. His finger was bleeding minimally, and his pain at that time was reported to be moderate. (Scott Lossman, M.D., Affidavit, Dkt. 21-3, p. 4, 11.) Plaintiff's finger laceration was closed and the wound thoroughly disinfected by P.A. Valley. (*Id*.) An x-ray was also ordered.
>
>     P.A. Valley gave Plaintiff Ibuprofen to help with the pain. Plaintiff asked for something more for the pain than Ibuprofen, and P.A. Valley said that inmates are not allowed anything narcotic. (Amended Complaint, Dkt. 13, p. 6.) P.A. Valley did not give Plaintiff any supplies to take back to his cell to disinfect his wound. P.A. Valley said to follow up in 3 days to evaluate tendon and have a range of motion test after the pain decreases, and to follow up in 7 days for suture removal. (Plaintiff complains that these evaluations did not occur, but it is unclear whether the medical unit was supposed to schedule the follow-up visits or whether Plaintiff was supposed to schedule the visits; in addition, Plaintiff alleges that he had several medical visits subsequent to his first visit, and those subsequent visits and the status of his injury are not necessarily documented in the medical records.)
>     Later in the day on January 27, 2010, Plaintiff submitted an HSR, complaining of pain. The "Health Care Documentation" portion of the HSR states:
>     "Subjective: Patient smashed finger earlier in the day and received stitches. Patient refused IBU at that time, spoke with Patient at 2310, complained of severe pain. Patient stated IBU was not working, he needed something else. Patient was advised to fill out HSR

ORDER - 3

|                   |                                                                                                                                                                                                                                                                                                                                                                                                                                                                              |
|-------------------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                   | and I would speak to sick call about getting him seen in A.M. Patient refused. At about 2210 Patient contacted unit officers stating he needed IBU for pain. Patient given 1 box IBU per protocol. HSR was received at this time. Plan: Refer to OPC for follow up; patient given [illegible]." (Dkt. 21-3, p. 23.)[2]                                                                                                                                                        |
| January 28, 2010  | Plaintiff complained that his pain had increased and the Ibuprofen was not helping, and he saw Defendant Wingert, who consulted with a doctor, and then prescribed a higher dosage of Ibuprofen (800 mg) for 30 days and an ice memo for 3 days _Affidavit of Scott Lossman, M.D. Dkt. 21-3, ¶ 12). Medical records reflect that the consulting doctor was Dr. Adrian. (Plaintiff's Supplemental Response, Exhibit HH, Dkt. 45-1, pp. 2-3.) Plaintiff asked Defendant Wingert why he could not get help with the pain, and Wingert said it was because of a policy not to give inmates narcotics for pain management. (Amended Complaint, Dkt. 13, p. 7.) Also on this same date, Plaintiff was x-rayed. (*Id*. at 13.) |
| January 29, 2010  | Plaintiff submitted an HSR, complaining: "still haven't seen a doctor, finger keeping me awake to painfull [sic] Ibs -– Ice not helping." (Dkt. 21-3, p. 24.) He went to the medical unit to pick up some ice, and told unidentified medical staff he needed help, and they told him to put it in writing. (Dkt. 13, p. 8.) The x-ray report was prepared by the doctor on this date (in Oregon).[3] |

---

[2] The January 29, 2010 HSR was stamped "*received*" on January 29, 2010, but the LPN's *notation* of "taken care of" and the LPN's signature showing that the HSR had been reviewed by the LPN occurred on February 8, 2010. (*Id*.) Plaintiff's Amended Complaint and the kites show that Plaintiff had various medical visits in between January 29 and February 8, but the Progress Notes skip from January 28 to February 10. The fact that some of the HSR responses seem to have been completed long after some of the visits (which visits themselves do not appear to be documented and do not necessarily appear to correspond to the HSRs), makes analysis of Defendants' actions and states of mind difficult without explanation from Defendants themselves.

[3] The HSR response "plan" by the LPN appears to have been written in on February 8, 2010; it noted: "taken care of." (*Id*.)

ORDER - 4

| | |
|---|---|
| January 30, 2010 | Plaintiff submitted another HSR, stating: "4 days with pain in finger. Help please!! Ibs- and Ice are not helping." (Dkt. 21-3, p. 25.) The HSR was received on February 1, 2010.[4] |
| February 1, 2010 | P.A. Valley reviewed the x-ray report. The results of the x-ray noted slight soft tissue swelling, but no acute fracture or articular pathology. (*Id.* at 12.) A note to this effect is written on the x-ray report. Plaintiff alleges that, while getting ice, he again asked unidentified medical staff for help with his pain, but was denied help. |
| February 3, 2010 | At about 3:00 p.m., Plaintiff wrote a kite informing staff that he was in severe pain and he thought his finger might be infected. (Exhibits to Amended Complaint, Dkt. 2-5, p. 2.) |
| | At about 8:10 p.m., Defendant L.P.N. Robert Balfour came to Plaintiff's unit to check his finger. Defendant Balfour allegedly said, "the wound looks fine," that "the pain is part of the healing process," and that "medical is not going to give anything besides Ibuprofen to inmates for pain management." (Amended Complaint, Dkt. 13, p. 9.) (There is no mention of whether Plaintiff told Defendant he suspected an infection, and there are no facts on whether Defendant did not himself perceive an infection.) |
| February 6, 2010 | Plaintiff showed a correctional officer (Soto) his finger, and the officer said that it looked infected. Plaintiff was sent to the medical unit, where he saw Defendant Wingert, who also said that Plaintiff's finger looked infected. Defendant Wingert allegedly said P.A. Valley had made the stitches too short [or perhaps it merely appeared so because the finger was swollen], and Wingert removed them from Plaintiff's finger, drained the finger of the infection, and gave Plaintiff hydrogen peroxide to clean the wound, but no other pain medication. (*Id.*, pp. 9-10.) |

---

[4] The response "plan," written in by the LPN on February 8, 2010, noted: "Patient complained of no pain." (*Id.*)

**ORDER - 5**

February 8, 2010   Wingert called Plaintiff to the medical unit to check on the infection, but did not give Plaintiff any additional pain medication. (*Id.*, p. 10.)

Defendant Balfour (or perhaps another LPN) completed the "response" section of all three of Plaintiff's HSRs that complained that the Ibuprofen and ice were insufficient for his finger pain. While these forms were received by medical staff a week or more before February 8, nothing in the record shows exactly when Defendant Balfour (or other LPN) received the HSRs. (One of the responses shows "Patient complained of no pain," and it would be helpful to know the facts supporting this entry, including on what specific day the patient reported he had no pain, and who that was reported to.)

February 10, 2010   Plaintiff did not complain of any further pain when he was seen by medical personnel in preparation for his discharge from prison on parole. (On this day, it is unclear whether Plaintiff was examined, asked about current medical issues, or simply notified of how to take care of his medical issues as he made the transition to his impending release on parole.) (Lossman Affidavit, at 20.)

February 17, 2010   Plaintiff was released on parole.

July 9, 2010   Plaintiff filed this civil rights complaint while on parole. (Dkt. 2.)

September 2, 2010   Plaintiff's parole was revoked, and, upon returning to ISCI, Plaintiff filled out a Medical History Questionnaire in which he listed no current medical problems necessitating medical attention. (Dkt. 21-3, pp. 26-27.) Plaintiff indicated that he was not taking any pain medication nor did he make any medical requests regarding his alleged finger pain. (*Id.*)

November 19, 2010   As a result of removal of a cyst from Plaintiff's scrotum, Dr. Lossman prescribed Vicodin for Plaintiff's pain associated with this procedure. (Dkt. 21-3, p. 13.)

**ORDER - 6**

| | |
|---|---|
| January 2011 | Five months after being re-incarcerated, Plaintiff submitted a kite seeking medical attention for his pinky finger which he injured nearly a year before. (Lossman Affidavit, ¶ 19.) In response to Plaintiff's newest kite, the medical unit evaluated Plaintiff's finger; it was noted to have healed well. (Dkt. 21-3, p. 15.) Plaintiff was noted to have full range of motion and strength in his pinky finger. (*Id.*) Medical personnel noted that Plaintiff's pain was due to possible nerve damage, and he was issued a 90-day prescription of Neurontin, an anticonvulsant used in treating neuropathic pain. (*Id.*) |

Further, it appears undisputed that CMS has a policy or custom that, "[d]ue to the high risk of addiction and potential for abuse, especially in a prison setting, narcotic pain medications are prescribed only when medically necessary." It also appears clear from the record that CMS providers *do* prescribe narcotic pain medication when medically necessary, such as in the case of Plaintiff's scrotal cyst.

Finally, given the fact that each individual Defendant saw Plaintiff only sporadically during the two-week time period at issue, Plaintiff will have to point to or bring forward sufficient evidence to show that each Defendant acted with the necessary culpability to show a genuine dispute of material fact as to recklessness or deliberate indifference. Accordingly, Defendant's Motion for Summary Judgment will be denied without prejudice to refiling it, and the parties will be permitted to provide Rule 56(e)(1) facts and argument, as set forth above.

## ORDER

**IT IS ORDERED:**

1.  CMS Defendants' Motion for Summary Judgment (Dkt. 21) is

**ORDER - 7**

      DENIED without prejudice, pursuant to Rule 56(e)(1).

2.    Defendants may submit a new motion for summary judgment no later than 60 days after entry of this Order, addressing the facts set forth above, whereupon Plaintiff will have 30 days to respond, and Defendants will then have 14 days to reply.

DATED: **March 9, 2012**



_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**ORDER - 8**